Good afternoon, Your Honor. My name is Bethany Hauser for the United States. The United States brought these erroneous refund suits to recover refunds that were erroneously paid to Mr. Stewart. The refunds are erroneous from two different perspectives. From the point of view of tax partnership procedure, they're erroneous because the refunds requested on the Forms 1040X are inconsistent with the tax treatment reported on the original return filed by the partnership, the Odyssey Partnership, in which both men were partners. From the other point of view, from the merits point of view, the refunds are erroneous because the original partnership reporting was correct. The partnership reported a large sum of money as ordinary income. It received that income pursuant to contracts that characterized it as income for services rendered, and that should properly be reported as ordinary income. As a result, the case has turned mostly focused on the IRS's response to an amended Form 1065 that the Odyssey Partnership filed in an attempt to change its tax reporting. That was not, in the weeds, the Form 1065 clearly states that the Form 8082, or rather the instructions clearly state that the Form 8082 is the proper form for this purpose. Is it your position that the instructions in Form 1065 and 882 speak with the force of law, the instructions? No. It's our position that they should have put the taxpayers and especially their professionals who were helping them with their taxes on notice. But they don't require anything, the instructions, legally require? Legally require. The regulation requires that it be filed on the proper form. The instructions say that the proper form is the 8082. Okay. Do you believe that the code or the regulations require a certain procedure for amending a partnership item on the partnership return? For example, do you believe that it says if you want to amend a partnership item, you must use an AAR? The TEFRA statutes include proceedings for, include provisions explaining how a partnership or an individual partner can request an administrative adjustment. Administrative adjustment request is a phrase from the statute, from the TEFRA statutes, and the code gives procedures that can be followed for. Right, but they're permissive, right? Not mandatory. It says may, not shall or will or must. Well, of course, no one ever has to file an AAR if you're satisfied with the original reporting. There's no requirement that an AAR ever be filed. Right. That's why they're permissive. But are they permissive in an additional way? Does it require you to use an AAR? Does the code or do the regulations require you to use an AAR to accomplish this amending of the partnership item? Or are you free to not use the AAR? No, you need to use an AAR, and you need to make an administrative adjustment request in order to get an administrative adjustment of the partnership item. Can you help me? Tell me where it requires that as opposed to says that if you do that, you may use that. The TEFRA statute says that the reporting on the partnership return controls unless there is an administrative adjustment. Then there are procedures for getting administrative adjustments. Now, I understand the point you're making about the permissive language. I think that's because no one is ever required to request an administrative adjustment. If people were permitted to request administrative adjustments outside of the procedures used by the — TEFRA gives specific times during which the administrative adjustment request has to be filed within a certain period of time and things like that. If people were allowed to go around those provisions that are included in the TEFRA statutes, then the fundamental purpose of the TEFRA statutes, which is to hold the partnership together so that each — all the partners get the same tax treatment, would be undermined. I understand you say the purposes would be undermined if the people don't follow these procedures. But I'm asking you, is there any specific requirement to follow these procedures that makes the following of these procedures mandatory in either the code or the regulations? Well, the partnership tax treatment can only be adjusted by an administrative adjustment. The IRS can only make an administrative adjustment after initiating a partnership proceeding, which requires a notice and did not occur with respect to that. Can you point us to the regulation that requires the adjustment to be made through an AR? Excuse me? Can you point us to the regulation that requires it rather than it being permissive? My point is you can't get an administrative adjustment unless there's either a partnership proceeding or you request it. It would not be in the interest of most taxpayers most of the time if the IRS could just go around making administrative adjustments without any prerequisite steps. What about the — excuse me — what about the regulation 6227D that says a request for an administrative adjustment on behalf of a partner shall be filed on the form prescribed by the IRS for that purpose in accordance with the form's instructions? Yes, that is the regulation that points the taxpayers to Form 8082. Does that regulation require a partnership to file an AAR to change the characterization of a partnership item, or does that regulation merely apply once an AAR is filed? No, it requires the partnership to file an AAR in order to obtain an adjustment unless there's — Say that in that — in D — in 16 CFR 301.6227D. I'm sorry. I haven't got a copy of it. Okay. Well, if that — okay. Thank you. Did the district — what's your understanding of how the district court ruled? Did the district court — I understood the district court to be saying, sort of in tension with your argument, but not necessarily completely, that an AAR isn't necessary if you substantially comply. And I don't — that's not really debatable right with the case law that we've got. Right. And that's — But it sort of also suggests substantial compliance implies that AAR is needed or some equivalent of it. Something that is in substantial compliance with the AAR, which would be something that notifies the IRS that an administrative adjustment is being required — requested. So in a way, the law doesn't require, strictly speaking, the AAR, but it requires an equivalency. Is that a fair statement? It requires something that is in substantial compliance. And what did you understand the district court to say? Did it say substantial compliance was met? Did it say substantial compliance not needed because AAR is not mandatory? What did you understand the district court's ruling to be? My understanding is that the district court found that there was substantial compliance there. Okay. So these questions we're asking you about, is it necessary, you didn't read in the district court's opinion, but you're asserting to us that it's in TEFRA and the CFR. What about case law? What about Semele, Semele? Semele — Do they shed light on this threshold question as to whether or not there's a mandate to file an AAR in the first place? The answer can be we should read them because you haven't thought of it, if that's one answer. But if you think there is authority, case law authority on this point, it might be helpful. I think that they both imply that an AAR is required because if an AAR were not required, neither case would have had to look at the question whether the documents filed, which were not the Forms 8082, were in substantial compliance with those requirements. Was — in this record, was the argument made below that you don't need to comply at all, or was it accepted by both parties that substantial compliance at minimum had to be met? I believe it was accepted by both parties that substantial compliance is required. Have you satisfied your burden of proof? Do you have the burden of proof here? The government has the burden of proof in erroneous refund cases, yes. I believe that we have satisfied our burden of proof. Under what authority are you entitled to a return of the refunds that were paid to the appellee? The United States has the right to sue for an erroneous refund. These refunds are erroneous because they were inconsistent with the partnership reporting and because they are — because the original partnership reporting was the correct partnership reporting. The district court seemed a little just upset atmospherically when I read the hearing, saying it seemed to him that your argument was heads we win, tails you lose, and connected to that would be, but correct me if I'm wrong, that even if you prevail, all the partners in Odyssey cannot anymore be treated similarly. That's correct. And moreover, their assertion is that now they are prejudiced because they can't refile because of the statute of limitations. Would you speak to that issue? I don't believe that they — the prejudice they're alleging is that we are not able to reach the merits of the issue here. Well, but you're in agreement on that jurisdictional point. They're saying that if you do prevail on the procedural question, they can't now give the information that you claim they didn't give before, right? Isn't that what they're saying? Like, let's say they want to explain why. They could have given that information in the original return. But you accepted it. So they would have thought, why should we? I mean, they gave the K-1 and your examiner said this looks good, here's your refund. No, no, I mean the original return filed in 2005, the one that reported this as ordinary income. There's no reason they couldn't have made this claim originally on that return. But they didn't think it was capital gains. So then they come back and they say, no, it should have been treated differently. The examiner says yes. And now the argument from the IRS is, well, that's a nullity. It's sort of nunk-pro-tunk. And they're saying, well, if you win on that argument, can we now give the information to show we were a partner with hydrocarbon? The important point in what you said is that there was no examiner on this case. There was never an examiner at the partner. Well, the lady in the record. The return was processed. Okay. I know that's your point. And then there's case law that says it's ministerial, and that's Phillips and Barnett. But I'm just saying, what about this? Could you answer whether or not they would be too late to try? Go ahead. Yes. They could still, when the IRS issued refunds to some but not all of the partners, they could have brought a suit under 6228, another part of TEFRA, to make the IRS open a proceeding regarding the or rather to come into court and challenge on the merits their attempted administrative adjustment request. They couldn't file a new form giving you the information. That's correct. On the other hand, they also, in this case, the district court looked at the merits of the issue. So it was — But held adverse to you. That's — Held adverse. The district court in the Regas case also looked at the merits of the issue and held for us in that case on the same record. So TEFRA provides a remedy or provides a procedure for amending a partnership return. Is there any other provision in the Internal Revenue Code that would allow the partner to amend his return to make the change that was made here? Well, a partner may file a return that's inconsistent with the partnership return if he identifies that inconsistency and explains it. And so the individual partners could have filed Forms 1040X, explained that they were inconsistent with the original partnership return and why. Those would have constituted partner-level administrative adjustment requests. But other than following the AAR procedure, is there any other procedure in the code that would allow a partner or the partnership to amend their return? No. I mean, the partnership returns are informational returns. So partnerships do file amended Forms 1065. Non-TEFRA partnerships, partnerships that are not governed by TEFRA, do file amended Forms 1065. I'm kind of speaking to Judge Elrod's point. If this were considered to be discretionary with a partner, whether to file the AAR form, what other form is there under the Internal Revenue Code that would allow him to amend the return? Is there anything? Well, I think Samueli says that a 1040X accompanied by sufficient explanation. Well, that's substantial compliance, isn't it? Right. Anything else? There's no other procedure that might be invoked. Either a partnership should be attempting to change partnership-level treatment or in his individual case, if he's in conflict with the partnership, do it in his. And outside of those two cases, there's no administrative thing that could be adjusted that somebody could be seeking to adjust. Okay. Is the government concerned that the Stewart's and the Plato's are treated differently than the other people's names, the other people? The government would have brought erroneous refund suits against all four partners who did get refunds except that the statute of limitations had expired. Right. And so the government approved this, went along swimmingly for a length of time. The other people wanted to have the same treatment that the first set of people had. And now because of the government's dilatory actions, they're going to be treated differently. Well, but they will be treated the same as Regas, who did not get his refund. I see that my time has expired. I'll ask the Court to reverse the discussion. Thank you. Okay, Mr. Lally. May it please the Court. Yes, sir. So I'm thinking of how I can add to the discussion here. One issue that wasn't touched on, and, of course, if there's a direction you all want to move me in, please do so, is the partnership item issue. And that is that in order for the government to prevail in an erroneous refund suit, they have to prove, and the burden is on them, that Odyssey did not affect the change in reporting their $20 million of income from ordinary income to capital gains. And to establish this element, it requires this Court or the lower court to decide whether or not a partner to decide a partnership item in a partner-level proceeding, which TEFRA prohibits. And just to hone in on the point that we're dealing with a partnership item here, the leading case in this area is Wiener, and Judge Davis was on that panel. And the taxpayer there claimed that a refund, that he was entitled to a refund after paying a partner-level assessment based on a flow-through item from a partnership. And the grounds for the refund was that the partnership statute had expired. And so the Court in Wiener decided that that partnership statute question was a partnership item focused on three features. The first one is that it dealt with facts specific to the partnership. Now, that's even more so here than was the case in Wiener. Before we get to Issue 2, can we focus on Issue 1? And here's the procedural posture. Are you recommending that we affirm because your clients gave sufficient information to be equivalent to a substantial compliance? Are you saying affirm because the government has stopped, in this case by having accepted? Or are you saying affirm because they didn't need to comply with 8082 at all? Well, Judge Higginson, there are at least three independent grounds. What's your primary ground for affirming? Is it the reasoning of the district court? Is it any of the three I just listed? What's your favored ground? Yeah. So I don't know that we have a favored, but we think that the partnership item issue would preclude the necessity. I guess any one of the issues would preclude the necessity of the other issues. But if this is a partnership item, then it would be appropriate, I think, not to reach the substantial compliance issue because that issue does involve piercing through and looking at what happened. The district court did say substantial compliance. Correct, Your Honor. That was its holding. Correct. So the district court did not reach the partnership item issue, and it was also he also decided the case before Regas, so it didn't have the benefit. Well, is that correct? As I looked at the record, he was given Regas. It was briefed to him, and then he waited three years before making his ruling. Is that wrong? You say he didn't have the benefit of Regas? I believe the appellate court decision. Yes. I'm pretty sure that he had Regas at the final time that he made the decision. He'd had it for several years and briefed. Not argued, not in the briefs, but before he made the ruling. If that's the case, I stand corrected. Okay. In my view, if this is a partnership item, it would be appropriate not to delve into what filings were made at the partnership level, what did the IRS do at the partnership level. But you aren't disputing sort of the Phillips-Burnett line of authority, that if the IRS commendably quickly refunds money, accepting whatever the taxpayer says, the law is quite clear that they can come back and correct it if it turns out that's wrong. You aren't challenging that line of authority, are you? So we're not challenging that the IRS, within the statute of limitations, can come back on substantive grounds. Within two years, and that was barely met here. On substantive grounds and say you were not entitled to the refund because of the underlying merits of the case. But that's different than saying, regardless of whether the taxpayer's claim was absolutely indisputable, regardless of whether the taxpayer was indisputably entitled to the refund, we can still come back and say there was a foot fault in the paperwork that was filed, and now it's too late to come back and correct it. Sotomayor, putting aside the indisputably correct, because that does get into jurisdictional questions, and you won that below, whether or not this should be ordinary or capital gains. Maybe my focus is the foot fault. Their claim is that you've got to use an AAR, and that requires an 8082 form. Then if you have benefit of Regus, I read that to say, well, you can also substantially comply. And that's what I thought the district court said here. So I'm asking you, is that a correct description of the district court's holding, and is that the ruling that you're urging to us? That is one of several alternative grounds that we are urging to the court for. And I agree that the district court decided that there was substantial compliance, and there was substantial compliance. One of the ways to amend a partnership return is technically through an AAR. And if you do it through an AAR, then that does afford the taxpayer some correlative rights in the event that the IRS does not accept it. Here they did accept it, so it was moved. Roberts, I guess if he did have Regus, what was different about the information that your clients gave than the information Mr. Regus gave that wasn't substantial compliance, according to Judge Ellison? Well, the issues over — some of the issues overlap, but they're not the same issues. So the three issues that we've presented to the court are substantial compliance on the Form 1065. That was not at issue. Regus involved a Form 1040X. It was a partner-level filing. It was not a partnership-level filing. And the court in Regus, this court in Regus — Let's assume there's not even an AAR or an 8082. What's the information you gave them, just a record cite, as to why you wanted to change the characterization? What explanation did your client give them to say, oh, it's not ordinary income, it's capital gains? Just the record cite for that, if you can describe it. What did you tell them was the reason you were changing? So the record cite — so the — so the 1065 on its face explains it, and the record cite for that is 649 is the Schedule D, which has part of the information, but the entire return starts at 644. And in a nutshell, what was the reason that it was — that you were saying it should be changed from ordinary to capital? Just — Sure. So the content of that Schedule D explains that the reason the partnership is moving from the $20 million from ordinary income to capital gain is because on April 1st, 2004, Odyssey had a disposition of a capital asset that it had purchased on March 7, 2003, and for which it received $20,432,323, resulting in long-term capital gain because the asset was held for more than one year and was capital-in-nature. Isn't that exactly what Regas said? I don't — I don't know that Regas — I'm not — I was not involved in the Regas case, but the Fifth Circuit decision in Regas did not — I — the way I read this Court's decision in Regas is it expressly prohibited even looking at that because that is a partner — that is a partnership item. That is a partnership-level issue. And so I don't think — I don't think Regas speaks to it at all. But in — But Regas said that he didn't — Regas didn't substantially comply with AAR. Correct, Judge Davis, but — So what do you mean they didn't look at it? Judge, that was focusing on Mr. Regas's personal income tax return, his Form 1040X, and whether or not that would constitute an AAR, and that did not contain the reading. That did not contain the Schedule D that Odyssey's — the partnership-level Schedule D contained. And, you know, and on top — and on top of that — So Regas isn't applicable because it's not dealing with the individual's part. It's dealing with an actual partnership item of which that there's no jurisdiction — strips jurisdiction under 7422H. Yes. So — so — so Regas, on — on the partnership item issue, I think that's an issue in common with this case. But in turn, on the substantial compliance or AAR issue, it's a different issue because his — because the Regas case involved 1040X, this case involves a 1065, and the 1065 is the partnership-level, you know, proceeding. But don't — in order to comply with TEFRA, isn't it necessary for both the partnership if you make the — try to make the amended return by the partnership, or the partner? Aren't the rules the same? You've got to file that 8082. Isn't that right? Well, so — so there's — there are some differences, but — Well, don't both have to file the 8082 and follow the instructions of 8082? So the instructions — the instructions called for an 8082. The — in Regas, though, Regas's individual return did not provide the same content that an 8082 would call for. In this case, the 1065, it did contain the same information that an 8082 would call for. I mean, it had — was it filed at the — at the location it was supposed to be filed? Yes. So, Judge, there are actually — so there are three express requirements in the regulations. One is that it's filed in the correct office. It was. It met those express requirements. What about the details? And the details — so I just — I just read kind of a narrative of the information contained on Schedule D. That is, I — we think, easily sufficient to meet that detailed requirement. I mean, just to put it into context, most — most tax return items, they're just numbers on a return. So, for example, if Odyssey had — had increased their — a deduction for renting drilling equipment, that would have just showed up in the — in one number under rent on the return, no other explanation. Because this involved a Schedule D, the Schedule D already has built in more of an explanation than most return items would — would. So in the rent case — you know, in the case of an increased rent, somewhere on the detail, whether it's on an 8082 or some — some attachment, but when you have a Schedule D item like this and when it is reported in detail the way it was, you already have a sufficient explanation. That was the district court's ruling, essentially. This was substantial compliance. Correct. If — if you didn't have to substantially comply because Form 8082 isn't required and AAR isn't required, what would be — where would we look to know what is required? Is this — and is that an argument you're making, that it's something less than that? So, Your Honor, I don't think the Court needs to reach the issue, but a — an amended partnership return should satisfy to amend the partnership position. So once they accepted the amended return, that was — that's it. Correct. Not an estoppel theory, that's just enough. Correct. Correct. And we — and we think the summary judgment evidence is undisputed on this point. We have Ms. Swain's deposition testimony, and there were — there were a number of IRS people involved. The IRS, if they had countervailing summary judgment evidence, they could have perhaps gotten an affidavit from one of them. They didn't. And then Ms. — That's my fault that I'm — we started off down this path, probably, because I ask questions under this — this way, and we've kind of gotten on this. But you don't even think we should rule in that way, right? You think we should rule that it was substantially compliant, or — or do you think we should — what ruling — I think Judge Davis asked you this several times. How would you want us to rule? What is your — your best position that you think is defensible? Yeah. So, Your Honor, I really think there are — there are alternative strong arguments, and — and — but I'm — I'm just suggesting, if — if I were the decision-maker, I would start with the partnership item issue. I think it's — I think it's clear under the — Make a finding that it is capital gains. No, it's — Confirm the — Don't — Go ahead. Excuse me. I'm sorry. So the partnership item issue being, we can't even look to what happened at the partnership level and make a finding as to what happened. We can't even make a finding on substantial compliance because this is a partnership item under Weiner under Regas. So we lack jurisdiction. I'm — I've thought about it. I'm not sure if it's a jurisdictional argument or not. Okay. So let me ask you this. So regardless of how little information the partnership amended return has, at this — as we stand in this case, we can't even look at that to see if it'll comply with TEFRA? If the — if the Court reaches the partnership item issue first, that's correct. Now, what — now, what do you base that on? The partnership item issue? Yeah. In other words, that — in other words, let's say that — that the partnership amended return did not have the information it called for by the statute and by the regulations. You're saying, nevertheless, in this partnership return, we can't consider that? That's correct, Your Honor. Under the precedent that in three prior cases, the government urged this Court to create. Remind us of those cases again. Yes, Your Honor. So there's Weiner, and this is — and I started to talk to this — to describe the way this involved the partnership statute of limitations, but it was a partner-level proceeding. And the Court said — basically relied on three things. One, it deals with facts specific to the partnership, just as — just as we do here. Two, the determination affects the partnership as a whole. That's the same here. We're talking about a conversion of capital gain — to capital gain, which would affect the whole partnership. And it would affect the amount, timing, or character of income, and that's exactly what we're talking about. We're talking about changing the character from ordinary income to capital gain. So Weiner supports that this is a partnership item, and then Regas followed Weiner. And Regas — and if you — and if the — and in reading the opinion, this is expressed as the adjustment theory in the case. It's the precise issue we're talking about. It's whether or not determining if Odyssey converted the $20 million from ordinary income to capital gain, whether that's a partnership item. The government argued in — in Regas that it is a partnership item. They prevailed, and that poured Regas out. Procedurally, the posture is flipped now, and the government's on the opposite side of the issue, and now they're arguing the opposite. Roberts. Roberts. You make this argument to Judge Hughes, or did he just overlook it, this pour-out theory, that it can't be reached at all? We — we definitely argued the partnership item issue. I don't recall — I don't recall exactly how it was articulated, but it was — it was definitely — And what was his — But you didn't have Regas yet at the time you were making the arguments. So I may be recalling it incorrectly. I thought that maybe the — that maybe Judge Hughes didn't have the Fifth Circuit's decision in Regas. But at the time, you all made the arguments, as opposed to the time he ruled. That's my recollection. I — but I'm not certain of that point. See, I read 6227 to allow either the partnership to — to file the amended return and — and trigger the proceeding, or a partner can do that, even when the partnership hadn't — hadn't filed one. Is that not right? So — so — so a partner can file either an inconsistent position statement or a partner level AAR, and there — and that's — and there are separate procedures for that. And that was actually what's involved in Regas, whether or not his partner level — All right. We clearly have a partner level situation here, huh? So — so in — in the case before the Court right now for Stewart and Plato, we're talking about a partnership level filing. All right. And whether or not that changed the — the treatment of the partnership's income from ordinary income to capital gains. So — so you — your argument is the partnership amended return substantially complied. It — they didn't file an 8082. Correct. So — so we believe that — that the 1065, that the partnership filed, substantially complied. It had all — all of the content that would have been required in 8082. And — and we believe an 8082 is — is not — you know, is not strictly required. Now, which one is it? What if — what if it is strictly required? You're saying that it was substantially complied anyway? Correct. What was the third case in the trilogy? Yeah, the third case was Irvine. And Irvine — Irvine's consistent. There were actually a couple of issues, but the one that's consistent with — with our issue is there was also a statute of limitation issue that included — that would have required the review of the partnership statute of limitation. It actually involved the interplay between the partner statute and the partnership statute, and the Court determined that requires us to pierce down, look at what happened in the partnership, can't do that under TEFRA, it's a partnership item, and the taxpayer lost there as well. And all of those, because the taxpayer was the one who brought suit in claiming a refund, it worked to pour out the taxpayer. Here, because the shoe's on the other foot, it has the opposite effect. So you're — you're saying we can't look at the partnership return to see if it complied with — substantially complied with TEFRA? So, Judge, what I'm suggesting is that it would be consistent with this Court's in that trilogy of cases to decide not to reach the issue of substantial compliance and just decide this issue on the partnership item. So we could decide the case on the partnership item. We could decide the case that it substantially complied, or we could say that it's not required at all? Correct, or you — Or we could go on the merit, the second argument that the district court made. Correct. The Court could also find that there was waiver. The fact that — and I see I have seven seconds, but — Finish your sentence. Finish your talk. Okay. So — so a waiver that the IRS can't, after they've already accepted a refund claim, paid it out, then come back later and claim there was some footfault after the time has already expired to go back and amend it. And the Angus Milling case the government cites on waiver is — it's not on point, but it makes — but it highlights an important point. There, the Supreme Court stated that — that just an investigation, if the Commissioner just — just performs an investigation on an informal claim, that doesn't waive the Commissioner's right to then come back and say, you know what, we actually think the informal claim was defective, we're denying it. But here, it's different. Here, it's not just an investigation. It's an actual acceptance of the claim, a payout of the claim. We think that those are unmistakable acts that waive any procedural defects or faults. I think we have your argument now. Thank you very much. Okay. Ms. Houser, back to you. Thank you, Your Honor. On the Irvine-Weiner-Rigas issue, I'd just like to say, as we stated in our reply brief, it's my impression that we lost that issue in at least some of those cases, and that the rule in this Court is that while a court cannot reach through and decide a partnership issue in the first instance, it can certainly look at the outcome of the previous partnership proceeding. Those cases are also distinguishable, as I think Judge Elrod suggested, in that the jurisdictional bar of 7422H applies in those cases. It does not apply in this case. 7422 is the taxpayer refund statute. What do you say to the argument that we shouldn't even look at the partnership return, amended return? I think that that argument was rejected by this Court in Irvine when the Court said, of course, we can look at whether an issue was decided at the partnership level. And I think also that in Rigas, the Court looked to the quality of the documents that were alleged to be AARs, that were arguably AARs. The Court in Rigas did not look at the 1065 because there was a statute of limitations issue. Rigas brought suit more, I believe it was more than two years after the 1065 was initially filed, the amended 1065. And so the Court did not bother to do a 1065 analysis. I think we briefed it. But the Court did look at the 1040X, which was within the requisite time period. Are we bound by that holding in Rigas? Well, Rigas involves a different party and is not published. But it does involve the same partnership, so it seems like a persuasive value. Persuasive, but not binding. Yes, exactly. Yes, that's our position. What do you say to the position of the District Court, or the holding of the District Court, that the fact that the partnership, it disclaims partnership in the contract documents as of no matter, and that really this was complete capital gains, and there's a whole little section on that. Can you address that? I think that that argument by the District Court, that holding by the District Court, is flatly inconsistent with the Danielson rule that applies in this Court that says that the parties are bound by the terms, the way they choose to structure their contracts and the terms they use to define them. I also think Judge Ellison in the Rigas case did a detailed analysis of all the facts and circumstances of those in the absence of time to go through them all. I think that he laid out the reasons that this appeared to be a servicing relationship and not a joint ownership or an umbrella partnership type situation. Most important from our point of view, of course, is that the parties did not hold themselves out to the IRS as a partnership at the time that we could have investigated at the level of that putative umbrella partnership. What was lacking as far as information TEFRA requires in the partnership return here? In the amended partnership return? Yes. The AAR. What's lacking is the detailed explanation. That's what the tax court was looking for in Samueli. Like what? What this Court was looking for in Rigas. Information that would help the IRS decide whether it was necessary or whether it would be advisable to open an investigation, to get a real examiner assigned to the case. For example, what would you be looking for in this case? In this case, we'd be looking for an explanation of why they decided that this income they believed it was not ordinary income and was instead capital gains. Opposing counsel said that the numbers on the return will change, but here the numbers didn't actually change. They just moved from one place to another. Well, you want some explanation for why they now treated it as an asset rather than Exactly. compensation? Exactly. Why do they now believe it is different from what it was before? If you look at the Form 8082, half of that form is a blank space for explanation, and that's what's missing here on the 1065 and also what was missing on the 1040Xs in Samueli and in Rigas. Okay. Thank you very much. Thank both of you for your argument. Thank you.